Your Honor, this is the third case on the morning call. 2-08-1106, speaking to the State of Illinois v. Kennedy v. Smith. On behalf of the appliance, Mr. David Jimenez-Eckman. On behalf of the athlete, Ms. Sally Spitz. Mr. Jimenez-Eckman. Thank you, Your Honor. May it please the courts, would my co-counsel, Lieutenant DuBose of Ms. Swiss. Your Honors, Mr. Smith received a fundamentally unfair trial below. He, through the administrative process, his case was reassigned after it was sent back to the same judge who heard the case for the first trial. Who had presided over a guilty plea and sentenced Mr. Smith to 67 years. That same judge, in rejecting his plea here, communicated very clearly her pre-existing view of the merits. The trial proceedings were filled with errors from the beginning to the end. Starting with the jury selection and going all the way through closing argument. We have raised many different, quite substantive errors in our briefs and it's not possible to cover them all. I've selected a few that I intend to focus on. Don't be so unoptimistic. Just talk faster. I was a high school debater, so I can talk very quickly. I'm a speed listener. I don't think I would do any of that justice. So I have focused, I've picked a few to focus on, but obviously, as in any argument, my most important goal here is to answer any questions that any of you justices may have about any of the arguments. So I urge you, if you want me to focus on something in particular, I'll absolutely do that. Let me start off with a brief... Yes, Your Honor. The judges are only regarding the admission of Haviland's so-called confession. The purpose of both court and court impeachment. I'll start with that, Judge. Here was the situation. As the court knows, in addition to putting the state to its reasonable doubt burden, we had a situation where there was an alternative theory with not just passing evidence, but confessions from more than one person. Ms. Dallas Pacheco, Adam Haviland, and some physical evidence that matched up. The gun that was recovered from the Brumman house that could not be excluded. So we were in a situation where we were proving up an affirmative case. I'll call it the DeChico case. Prior to calling Ms. Haviland, I'm sorry, Mr. Haviland to the stand, we put on Ms. DeChico, and we were permitted, as we should have been, to admit her previous confessions to the crime, where she implicated Mr. Haviland and Rusty LeVon. And there was a videotape that was shown to the jury. And so we had a case, and in that case, Adam Haviland had been the person who was the accomplice, not the shooter, but the accomplice, the guy who was grabbed. So when we called Adam Haviland to the stand, Your Honor, first of all, we tried to talk to him prior to trial, and he wouldn't talk to us. So our investigator had been out and talked to each of the people that he confessed to, so we knew what we could call up to prove up to impeach him or to admit a substantive evidence. But as an officer of the court I represented then and I represent now, we did not know what he was going to say when we called him to the stand. So we called him to the stand, and Mr. Haviland, as you can see from the transcript, was permitted, we were permitted to ask him five or six questions. We asked him whether he was involved in the Burrito Express shooting, and he denied that. And we asked him whether Ms. DiCicco was involved, and he denied that. And then we asked him whether he had talked to Ms. DiCicco about it, and right around then is when the state interrupted the judge, obviously, excused Mr. Haviland, and struck the testimony. We've shown that's error for two reasons. Let me start with the impeachment theory. Mr. Haviland had done affirmative damage to our case. This was not a situation where we had somebody who had made a prior statement and we were hoping he would say something which supported the case, and instead he gets up and says, I didn't say that. This was a situation where he gave testimony that directly contradicted the substantive evidence from Ms. DiCicco that had been previously admitted. So there had been affirmative damage there. This distinguishes the cases that the state relies on because in those cases, the proponent had always called the witness hoping to get something, and the witness gave neutral testimony. For example, in the Cruz case, the state called to try and establish a relationship between two other people. They called the witness to establish a relationship between two other people, and the witness said, I don't know whether there was a relationship or not, or no, I didn't observe that. That did not contradict affirmative evidence of the defendant in that case. And so the affirmative damage rule was clearly satisfied, and there was a clear offer of proof. It was plain error not to admit that. It was also highly prejudicial. The state argues that it's cumulative. That one had my head scratching. We're in a situation here where, again, in addition to the reasonable doubt theory, we were putting on another case. There were two sets of people, and there were confessions from what I'll call the Hodling group, and there were confessions from the DeChico group. The confessions had been made and recanted. I mean, Mr. Hodling, as you know, recanted on the stand in the case. So the jury was choosing between two sets of recanted confessions. My view, of course, is that the DeChico group was much more persuasive because the car had been destroyed and because the burn-up gun could not be excluded. But put that aside. Let's say it was evenly balanced. The idea that it's cumulative, that another member of the group confessed to three separate close people, it strikes me as unsupportive. So you start off with the impeachment. I think I've addressed what the state's arguments are on the impeachment theory. We also tried to get the statements that Mr. Hyland had made to his sister, his cousin, and his roommate in as substantive evidence under the U.S. Supreme Court ruling in Chambers and under the Cruz case. And the argument that the state makes – so let me just turn in my notes so I can make sure I don't leave out any of the factors here. The issues are whether it was the indicia. There are four indicia. And, of course, they're not exclusive. This is a hearsay weighing proposition, right? The issue is whether or not there's sufficient indicia of reliability. So spontaneously, to a close acquaintance shortly thereafter, corroborated by other evidence is number two. Self-incriminating and against the declarant's interest is number three. And an opportunity to cross-examine is number four. I don't see how there's any argument on the self-incriminating against the declarant's interest. These were plain out-and-out confessions that he was involved. I'll start with three. That's the easiest. I'll take the next easiest one, the opportunity to cross-examine. Mr. Hyland was in court available for cross-examination and had not, in fact, asserted his Fifth Amendment rights. He might have later on. We don't know. But at that time, he had answered the substantive questions, and he was available for cross-examination. The state says he wasn't available because he – it kind of turns it on its head. They say, well, because he was offering hearsay, he wasn't available. In other words, because the judge ruled against us, he wasn't available for them to cross-examine. It doesn't make any sense. The corroborated by other evidence. I think this is the next easiest one. You had another confession from another human being. You had the Brummett gun issue. You had the burnt car. That is enough to corroborate this other theory. Even if it wasn't to close acquaintances, even if it was far removed in time, those three out of four so strongly support the admission as substantive evidence that I think it would have been error even if there wasn't anything on the first admission. But here we had the sister, we had the cousin, and we had the roommate. Now, because we never got that far, there wasn't detailed evidence, and it wasn't challenged on that basis. The judge never let us get that far. But clearly there is good support, very strong support for several of the indicia and some support for all of them. This was plain and simple error, and it was highly, highly prejudicial. Stepping back from all the technical arguments briefly, I think the spirit that motivates Chambers and then Cruz, the defendant, Mr. Smith, in this case, had a fundamental due process right to have the jury deciding his fate here that this kid had confessed to three other people. The jury just never got a chance to hear that. They could have weighed whether Mr. Hoagling's recantation on the stand was more or less credible than what Mr. Highland told three other people on three different instances later that summer. But that, if it got it, then it would have been treated as impeachment or substantive evidence? Well, as it went, Your Honor, I think it would have come in as both. I don't think it would have been merely impeachment, but we never got that far. I mean, he had denied it on the stand, so we clearly could impeach him as long as the affirmative damage rule was satisfied. But we also, for the reasons under Chambers and Cruz, this was pretty clearly – and the other case, the case with the K, Cordialis, there's other cases where I think the indicia were even less strong than they were here. But we had this rare case where the Plan B, I'll call it, the DiCicco evidence was so strong, there's nothing speculative about that. If I've answered the questions on this, I'll move on to something else. I was planning to start off with one minute on the evidence. I'm not going to argue. Can I ask you a question? Yes, Your Honor. With respect to this after it was denied, did you make an offer of proof as to what the other witnesses would have testified to? We did, Your Honor. There is an oral offer of proof based on the reports that we had. It appears in the record. Counsel read? Counsel read into the record. We did not call these people individually. But it was clear what the relationship was and, in substance, what they would ask, what they would testify to. And your good faith belief that, in fact, they would have testified to that had they been called? Yes, Your Honor. Based on – is that in the offer of proof? I don't recall. As I sit here, I try and look it up for it. But I believe that this was based on our investigators' reports of interviews with these people. In other words, we had an investigator. My question is, did you have some basis to conclude that if you called those three witnesses, they would, in fact, testify in accord with what they told your investigator? I'm not sure. I mean, isn't that part of your obligation with an offer of proof to show, here's the witness. You've called. They would testify to X, Y, Z because they told a prior investigator. And given the nature of the testimony we expect, we have some basis to conclude that, in fact, they would testify consistent with what they told our investigator. Respectfully, Your Honor, I'm not sure how a lawyer gets more than they told the investigator this. I mean, if there was something in the contrary, if I knew they were going to recant, then I would have an obligation to disclose that. But there's nothing in the record to that effect. And I just – other than relying on the investigator, I believe one of my co-counsel also met with them, one of my associates. But I can't represent that as I sit here today. When you say them, you mean the three witnesses? The three witnesses. Okay. Fair enough. It would be your responsibility if you did prove that to call those witnesses if I wanted to deny them. And we would have. We were prepared to do so. They were under subpoena. We planned to call them either way, but the judge denied the opportunity to do that. They were under subpoena or had appeared in court? They were under subpoena. Okay. Obviously, Your Honor, there's a number of logistical things that you face in a trial like this, and we didn't want to make them sit there for two weeks. But they were under subpoena. Let me talk briefly about the facts of this case, and I'm going to stand on the briefs in terms of the sufficiency of the evidence. But I think any kind of error analysis you do is going to be framed to a certain extent by how the evidence was presented in this case and what the evidence was. It's a rare thing, I think, when you see a state's brief that doesn't say the evidence was closely balanced. You don't see that here because you can't, in good faith, say that. Just as a quick review, there was no physical evidence. There was no fingerprint evidence of any kind. There was nothing recovered from the alleged getaway car, and there was no blood evidence. The court will recall that there was testimony about blood being all over the scene, the victim bleeding all over. And even though Mr. Smith and Mr. Hodling were taken to the police station the next day, there was no blood evidence recovered of any kind. There was no gun ever connected to the Hodling group. In fact, the only gun which could have been the murder weapon was connected to the DiCicco group. There was no neutral eyewitness identification other than Mr. Hodling. You had Mr. Pardo, who was the cook who was on the scene at the time. Mr. Pardo could not identify either Mr. Smith or Hodling in a photo array within 48 hours after the shooting. He, with a police artist, drew a sketch that did not look like Mr. Smith and, in fact, had the wrong facial hair. We know that because there's a picture of Mr. Smith at the police station the next day, and you can't go from clean-shaven to beard. You could have shaved off the beard, but that's what would have had to happen for it to match Mr. Smith. Mr. Pardo was never asked to identify Mr. Smith at his first trial, and he was never asked to identify him here. So no physical evidence, no ID other than Mr. Hodling. And so what you're left with here is Mr. Hodling's testimony on the stand. I don't know if the court actually had a chance to read the testimony. It's one of those Perry Mason moments where your jaw drops because he got up and he told a story that the state asked him to tell for 10 minutes. And then, to everyone's surprise, not the least of which ours, he completely recanted the testimony. That is the only evidence that could possibly satisfy the reasonable doubt standard in this case. And as I said, we'll stand on the briefs when it comes to whether or not there was sufficient evidence. But as the court is reviewing the other errors that we've asserted, that's the scales that we've got. I don't have something glib to add. Obviously, I have many other topics that I could cover, but if the court has no further questions on what we have covered, I'll save it for rebuttal. Thank you. Thank you. Good morning, Your Honors. Counsel. Good morning. May it please the court. I'll begin by addressing the Highland evidentiary ruling on Adam Highland. There were two bases, obviously, that are argued on appeal as to why Highland's testimony was wrongfully excluded. I'm going to address, because it was addressed last by counsel, I'm going to address first the issue of whether or not this could have come in under the Chamber's type of test. And it's our position that, truthfully, and this is what we start and sort of end with, there wasn't an offer of proof, a formal offer of proof that the witnesses who would have had him called have said that, in fact, he did talk to them and gave these statements, that the witnesses would testify as to what the offer of proof was. We would ask Adam Highland, did you talk to so-and-so? Did you talk to this person? Did you say these things? There was no offer of proof that, if called, that these other witnesses would have said something substantially along those lines. So we're looking now to determine, was there error? Is there something on this record that shows that those statements were so trustworthy that they should have been brought in? That's got to be the defendant's burden to show that an error occurred. And on this record, you can't see that an error occurred from what we have. We don't know what they would have said. We also, the little bit we do know seems to indicate that certainly some of these indicia are not present. Specifically, was it a spontaneous statement? There's no indication of that from what they said they were going to ask Highland. Was it made to close acquaintances? The defense makes the point that this was a sister, a cousin, and I can't remember what the other relationship was, a roommate. But if you look at the cases, and we've cited them in our brief, one of those, I believe, was the Bonds case. I think there was another case, Swaggart or something. They indicate, again, that some type of, if you're going to claim error, you have to have something there that shows that there's something closer than just saying this is a roommate. A roommate can or cannot be somebody that you would normally turn to as a confidant. There has to be a relationship established. In other words, if they want to preserve this, they have to go further and basically have something on here to show us that there's error, and they didn't do that. We don't know that he spoke to these people close in time after the murder. In fact, the little bit we have, two of the witnesses indicate that it was many months, probably the summer instead of the spring. Of one person, there was no indication at all as to when they spoke to this person. Corroborated by other evidence, you know, we don't dispute. Wouldn't a confession be an admission against interest and therefore an exception to your savings? Yes, but against penal interest is never the test alone. I mean, that's, you know, and there's a lot of cases that say that. That's just one factor, is it against the declarant's interest. And in this case, if you look closely at the three statements. I'm not suggesting a chamber's analysis. I'm suggesting whether or not this is impeachment only and non-substantive or whether it's substantive. And I thought that a statement against the penal interest in this state is an admission and is therefore admitted. If it meets the foundational requirements, it can be admitted as substantive evidence. Well, in this case, you know, looking at the three statements, we have him saying that he went to Burrito Express with Levin and Levin had a gun. One of the employees grabbed, grabbed Hyland, you know, grabbed him and Levin shot the owner. Even as far as in terms of are these confessions, they don't seem to be confessions. From a legal standpoint, I believe only the party, the defendant can make an admission. So using the word generally relative to Hyland making an admission. Right. That would be impossible for purposes of making a legal admission, which would be substantive evidence. OK. And you're right. We would look at it in terms of under chambers. Is it against the declarant's interest? We would suggest that the first two are not clearly, again, putting the burden on defendant where it belongs, are not clearly against the declarant's interest. The third one, they say, if in fact the witness were to testify along with what they would have asked Hyland, it says that he and Hyland, that Hyland and Levin were responsible for the murder. But again, there's a failure here and an offer of proof. And on the reply brief, they just suggest that they didn't need to go any further, that it doesn't have to be formal. We can infer that in fact they would have so testified. I don't think that's true, especially when we're looking for whether error occurred under this. Going back to under whether they could have brought this in and whether it was wrongfully struck as affirmative damage. Our position and our reading of the cases, including the Cruz case and the Cruz cases from the Illinois Supreme Court, is that it has to do more. In other words, this is right out of Cruz, where the party interrogates a witness about a fact which would be favorable if true, which is what occurred here. Were you responsible for this or did you commit this murder? Obviously, then, you know, if Hyland says yes, you know, it's favorable to the defense. But they receive a negative reply. He says no, that is not affirmative damage under Weaver. And that is right out of Cruz. And the distinction is a fine one, but it's warranted because you're bringing in statements that do not on their own have indicia of trustworthiness. And so it's a very small channel whereby the courts will allow this type of, you know, impeachment, which can certainly be considered to be substantive if you, you know, bring it in and that's really what you're going after. It's a very small window, very narrow window. And here it doesn't fit. What we have is, and they say, well, we had affirmative. We had an affirmative case. We had DeCicco saying that we did it. And that was brought in substantively. We don't disagree that that was brought in substantively and that that's their theory of the case. What we disagree with is what does the case law say in terms of is that affirmative damage? The case law says that's not. And in Cruz, sort of similarly, there was a statement by a witness and the argument was the state wanted to bring in a prior and consistent statement. And the Supreme Court said, no, you can't do that. It was only do not affirmatively support your case. In other words, this witness would have put Cruz with Dugan and there was evidence that Cruz and Dugan may have committed this murder. That was the state's case is that these two could have committed this murder together. So they did have independent evidence of this fact. But Cruz importantly says that just because we have proper evidence, which can be brought in in terms of your case, does not mean that this suddenly turns into this thing, which is just a failure to support your case. You know, Highland gets up there and says, no, so he's not supporting their case. He's not saying, yes, in fact, I did commit this murder. But he's not also pointing the finger at defendant by his testimony and making the state's case stronger. We believe that's what the case law says. It's got to affirmatively aid the opponent's case. In this case, the state is trying to prove the defendant committed this murder. Without Highland's testimony, is their case weaker? Yes, of course it is. But that's just saying because it didn't affirmatively support their case. It did not point the finger or incriminate defendant in any manner. Therefore, under this very narrow window that they allow this type of testimony or out-of-court statements to be brought in, this doesn't fit. Isn't it a two-part test, affirmatively support, and also the other part would be damaged, materially damaged? Affirmatively support. Well, it's a distinction, I think. The distinction is that a failure to affirmatively support, it just means that you— I'm sorry, go ahead. Support the state's case. Saying I didn't do it doesn't support the state's case in any way. It doesn't help prove the defendant guilty. Right, and that's the distinction. To say that it doesn't— It doesn't damage the defendant's case. Well, but that's never the question. That's the gamble, but okay. That's your position. That is our position. That is not the question. The question is, does it aid your opponent's case? In this case, it does not, and it was correctly stricken, and he was not allowed to go there with this. In terms, just real briefly, of the reasonable doubt, we're not saying there's a smoking gun here. There's not. We would have liked to have had a witness here who was a saint instead of Justin Houghton. But you get who you get when that person is there and is an eyewitness to the crime. So Justin Houghton's testimony on direct, along with his statement, which was brought in substantively, show that he knows the details of this crime inside and out. And his prior statement was made at a time, just a few months after the murder, when he claims, well, that prior statement in which I said all sorts of things, and, you know, there's a defense argument that, in fact, all that was in regard to or in relation to leading questions that were given to him, these sort of leading questions which brought him to what he said. But, in fact, I really went through and only set forth what he said, which did not come from any type of questioning that suggested the response. And in it, we still have the defendant went into this burrito express first. Defendant only had the gun. It looked like a .22. One of the men had chased them with a knife. That Houghton ran towards the side street, not the busy street. That he fell on the ice. The defendant was the one who fired at the man with the knife. That the man fell. That later Collett went to cloud nine, Collett being the co-defendant. That McMullen was driving the car. That he, Houghton, was wearing a green jacket. That the defendant did not dispose of a gun. And that the defendant shot three or four times. And he describes the knife. And all of these things are corroborated by other people. People that are in the area that hear the shots. From David Collett, who says he's wearing this jacket. From Pardo, Pardo in particular, who says this is exactly the way this went down. So all these details were given at a time just shortly after the murder. Didn't Pardo say that he grabbed Houghtaling. He did. And looked at his face at arm's length. He says that he grabbed him from behind but was able to see his face. I believe the ski mask came off. Did he ever identify Houghtaling in the court? No, he did not. No, he did not. He gave a sketch. The sketch is in the evidence. The sketch is pointed out in the closing argument and, you know, in the evidence. It looks remarkably like Justin Houghtaling. But he did not identify him. So he's behind. He identifies the coat. The coat that's seized from Houghtaling when he's arrested is a green coat with black on the collar. Just like Eduardo Pardo says. Eduardo Pardo gives a description of them. He gives these sketches. He makes changes to the sketches. So certainly the sketches is another factor in approving the defendant was there and that Houghtaling was with him. It's interrupted. Pardo couldn't even identify the defendant in court. That's true. He did not. Yes, that is true. But he gives a description of their ages, which is consistent with these two people. He gives a description of the height, which does vary afterwards. But his initial description is that they're both. It varies rather substantially. It does, yes. But initially he says they're both 5'8". That's his first statement. And the description by the two defense witnesses is that they're both 5'8". But you're right. That does differ later. He gives a description of a light-colored car being in the area that he saw Brissento talking to somebody. We have McMullen, supposedly the getaway driver, in a white car at that time. And then we have Justin Houghtaling recanting, but in an incredible manner. He says, well, I only pled guilty because my attorney was having a new baby and forced me to do this. Oh, and I only knew those details that I gave in May of 2001, a little bit after this, because I had discovery available to me. Well, we point out, how did you have discovery if you weren't even charged with a crime at this point? Okay, I didn't have discovery. But then later he says the same thing. I knew those details because I had discovery. It's totally unbelievable when he tries to retract his statement. His statement on direct is pretty much rehashed and pretty much consistent with his statement two months after the murder. The statement taken in Nebraska where he was arrested? It was. That was never recorded. It's only based on police reports. I believe it was recorded. My memory is that the statement is actually, I know I have a transcript. There was a transcript in the record on appeal. I don't remember if that was audio recording or whether it's just a transcript. But it is a transcript of his statement. So it may just be a written one. I took that to mean that there was an audio and that that's where it's from. And then Collette also says he was with the hoteling defendant, McMullen. He gave his green jacket to a hotel. He got out of the car near Donnie's Cleaners right at the time of the murder, which is right next to where this occurred. And he might have heard gunshots shortly thereafter. Obviously, he's trying to minimize his involvement in this crime, but he still puts them there. And then you say, well, we have this alternative defense. We have an alternative theory. We have this DeCicco possibility. But DeCicco told the police that her cousin, Adam Highland, was covered with blood. But yet we know that there was no blood trail found because there was evidence or there was a testimony given that there was no blood trail found to indicate that any suspect or somebody leaving the scene was bleeding. We know that she says, well, my cousin was cut with the owner's knife. The knife was tested. It came back with no blood except raw percent of the victims. Didn't DeCicco's mother see Highland shortly after, before and after the murder? She said he had a slight scratch on his hand after the murder, shortly after. DeCicco's mother. And beforehand he didn't. But there's never any testimony from the mother who saw him before and after regarding blood on him. Right. DeCicco's mother does not have a statement regarding any blood or anything of that sort. And then just to finish up, she has DeCicco has it occurring on March 5th. Why? Because she says she remembers clearly she was at the hospital with her niece being born. And there's evidence that her niece was born on March 5th. This occurred on March 6th. You know, those type of details where she also said that, you know, that his face was covered in blood, maybe from, you know, the victims spitting up blood. But she had said that he was wearing a mask. And then when she's confronted with it, she says, well, maybe he had a scarf on. She just changed her statement, changed her statement. It didn't ever add up. And then she, of course, later says, OK, we were just kind of huffing. This was something to prove that we were a tough group out there. We need all our evidence. But our evidence taken all together was sufficient to prove the defendant guilty beyond a reasonable doubt. Thank you.   Thank you. Thank you. Thank you. Mr. I was actually looking for something else. It's cited in our brief. And Mr. Highland confesses to these three people that he he and the rest of the group were the people responsible for the robbery. And he gets there in the offer of proof. There's some detail, not a lot. But there's some detail about what his role that he was not the shooter, but the guy who got grabbed. So it's hard to imagine that that wouldn't be against penal interest or obviously confession is a loaded term in a way. But it certainly implicates he and his friends in two positions. He confesses as an accomplice. He had to be right. He was not he does not confess as the shooter. The offer of proof is made in three pages in the transcript. And it's cited in our reply brief as the state, which is some things were different. Justice, as I stand here, do I wish that the offer of proof was worded slightly differently? I do, because I think it could be it could be clear. There's no doubt about that. But isn't it your obligation to show that the evidence would otherwise been admissible? And counsel seems to point out that. Let's assume for the sake of argument that that these statements took place between healing and the three witnesses. But you don't lay it out in your offer of proof to show that the evidence would otherwise have been admissible. And that's your burden on at the trial level. I apologize. I just am not sure what more other than the relationship that the statement was made spontaneously. That there was a small time lapse between the alleged statement and the events. And I'm gathering that your offer of proof didn't say that. That's kind of why I asked you that originally. What isn't that your burden to show to perfect this? I agree, Your Honor, as I must, that we have to put enough in as an offer of proof for this court to evaluate whether it was an error. I think that's the standard. And that's the case that we cited. There's not any specific technical requirement. But we have to have enough for this court to judge whether the testimony was admissible and whether or not it was error. And whether it was admissible or not would have been contained in your offer of proof. That's my question. And yes, Your Honor. But what we've got here is we have these four factors, these four in this show. We made a strong, clear showing that appears from the record on three of them. The timing is contained in the offer of proof. It isn't right away. It's not a failure of the offer of proof. It just doesn't support our case as well as the other factors do. But that's not required. These statements, the offer of proof contains – I don't think they contain exact dates, but I believe it contains the months in 2001 where these were made. And so the issue is whether the court can – whether that's enough information, given the corroboration, given that he was available for cross-examination, given that they were very clearly against penal interest, whether or not that's enough to make the Chamber's accrued determination, even if the exact date, which I gather the witnesses themselves didn't remember. It's not atypical six years later to not remember the exact date. So that said, I think that the offer of proof is substantive and contains all the information this court needs to make its judgment. Let me briefly address the affirmative damage rule. And your point, Justice Bowman, with Ms. Swiss, was it's certainly debatable whether or not it has to be – it just aids your opponent's case. The issue – the rule is called, of course, the affirmative damage rule. And I think that the perspective that it's only the State that has a case may in fact be true in most cases. As you know, many criminal appeals reach here where there wasn't an alternative case being put on. The State was just being held to a reasonable doubt. Could not be different in this case for all the reasons I described, and I won't go into them. We had an affirmative case, and there's no doubt that what Mr. Highland testified to damaged it. Let me also try and conceptualize the distinction here between the cases that Ms. Swiss referred to and what happened here. The cases where it was held there was no affirmative damage is when there was somebody who, for example, was a witness or a bystander, not an accomplice who was alleged to have done something. And the party, the proponent, called that witness hoping that the witness would say, I saw X. The party calls the witness. The witness says, I didn't see X. Didn't say X didn't happen. Just I didn't see it. I can't help you prove X happened. That's the Cruz case. I didn't witness this relationship between Cruz and Dugan. Didn't rule out that there was a relationship, but I can't help you on that. This is quite different for that exact reason, because Highland himself was implicated by DiCicco's testimony. What you're attempting to say, I think, is that the evidence doesn't prove the converse. My logic skills are failing me on the spot here, but I'll accept that that's the more eloquent way to say it, Your Honor. Your time is up. Would you close, please? Yes. Obviously, we've only had a chance to focus on a few issues. There are many other issues here. But the bottom line is, this was, I think you heard admitted, a closely balanced case. There were numerous errors. They were, I believe, motivated by the atmosphere based on the fact that it was a retrial. And I respectfully request that the conviction be reversed and remanded for instructions, either to dismiss for lack of sufficient evidence or for a new trial. Thank you. Thank you very much. Court, take recess.